FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 06, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHRISTINA LYNN G.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:20-CV-3003-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 11, 12.  This matter was submitted for consideration without

oral argument.  The Plaintiff is represented by Attorney Cory J. Brandt.  The

Defendant is represented by Special Assistant United States Attorney Ryan Ta Lu.

The Court has reviewed the administrative record and the parties' completed

briefing and is fully informed.  For the reasons discussed below, the Court

**GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES**

Plaintiff's Motion for Summary Judgment, ECF No. 11.

# JURISDICTION

Plaintiff Christina Lynn G.[1] protectively filed for supplemental security income and disability insurance benefits[2] on September 8, 2016, alleging an onset date of January 31, 2005.  Tr. 239.  At the hearing, the alleged onset date was amended to September 8, 2016.  Tr. 23.  Benefits were denied initially, Tr. 144-52, and upon reconsideration, Tr. 163-69.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on January 9, 2018.  Tr. 15-50.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 114-36, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

[2] As noted in the decision, at the hearing Plaintiff amended her alleged onset date to September 8, 2016. Tr. 23, 117.  "As a result, she would not be entitled to a period of disability or disability insurance benefits under Title II of the Social Security Act because the amended onset date is after her date last insured of September 30, 2009."  Tr. 117.  Accordingly, the ALJ dismissed Plaintiff's request for hearing under Title II of the Social Security Act, and noted the decision would address only the pending application for Title XVI benefits.  Tr. 117-18.

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 45 years old at the time of the hearing. *See* Tr. 26. She graduated from high school and has a certificate in fashion merchandising from Yakima Technical College. Tr. 27. At the time of the hearing, she lived with her husband and two children aged eight and twenty-six. Tr. 26. She testified that she also lived with her mother during part of the adjudicatory period, before her mother was moved to a retirement facility. Tr. 26. Plaintiff has work history as a cashier and home attendant. Tr. 27-28, 45-46. Plaintiff testified that she cannot work because of her depression, anxiety, diabetes, and interstitial cystitis. Tr. 29.

Plaintiff testified that her bladder pain affects her daily, and she has "continual pain" in her feet and hands due to diabetes and neuropathy. Tr. 29-30. She reported that she has to lie down three to four times a week, for six or seven hours a day, due to low blood sugar. Tr. 31. Plaintiff testified that her diabetes and depression both affect her daily activities and "play on each other quite a bit." Tr. 31-32.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

# FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the

1    claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

2    performing such work, the analysis proceeds to step five.

3         At step five, the Commissioner considers whether, in view of the claimant's

4    RFC, the claimant is capable of performing other work in the national economy.

5    20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

6    must also consider vocational factors such as the claimant's age, education and

7    past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

8    adjusting to other work, the Commissioner must find that the claimant is not

9    disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

10   other work, analysis concludes with a finding that the claimant is disabled and is

11   therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

12        The claimant bears the burden of proof at steps one through four above.

13   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

14   step five, the burden shifts to the Commissioner to establish that (1) the claimant is

15   capable of performing other work; and (2) such work "exists in significant

16   numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

17   700 F.3d 386, 389 (9th Cir. 2012).

18                          **ALJ'S FINDINGS**

19        At step one, the ALJ found that Plaintiff has not engaged in substantial

20   gainful activity since September 8, 2016, the amended alleged onset date.  Tr. 120.

21   At step two, the ALJ found that Plaintiff has the following severe impairments:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

diabetes, neuropathy, lumbar sprain/mild lumbar degenerative disc disease, obesity, personality disorder, affective disorder, anxiety disorder, and cystitis.  Tr. 120.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 120.  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b), with additional limitations.  Specifically, she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit about 6 hours and stand and/or walk about 8 hours in an 8-hour workday with regular breaks.  She has unlimited ability to push and pull within these exertional limitations.  She is limited to occasional balancing, climbing, stooping, crouching, kneeling, and crawling.  The claimant can understand, remember and carry out routine and simple tasks over an 8-hour day with regular breaks.  She can have superficial contact with the general public, and needs a routine and predictable work environment with few changes.

Tr. 122.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 127.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: production line solderer, electrical accessories assembler, and hotel/motel housekeeper.  Tr. 128-29.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 8, 2016, through the date of the decision.  Tr. 129.

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly considered Plaintiff's symptom claims;

3. Whether the ALJ properly considered the lay witness evidence; and

4. Whether the ALJ erred at step five.

## DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of examining psychologist, Alexander Patterson, Psy.D.; examining physician William Drenguis, M.D.; and treating providers Raylee Weaver-Jensen, Ph.D. and Suzanne Damstedt, therapist. ECF No. 11 at 8-12.

### 1. Alexander Patterson, Psy.D.

In January 2017, Dr. Patterson examined Plaintiff and opined that she would not have difficulty performing simple and repetitive tasks, performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instruction, and maintaining regular attendance in the workplace. Tr. 997-98. Dr. Patterson additionally found that Plaintiff "would have difficulty" completing a normal workday without interruptions from a psychiatric condition "due to mood instability, impulsivity, and very low stress tolerance"; and she "would have difficulty" dealing with the usual stress encountered in the workplace "due to her chronic and complex emotional and personality pathology." Tr. 998. The ALJ gave Dr. Patterson's opinion little weight for several reasons. Tr. 126.

First, the ALJ noted that Plaintiff "did not report the full extent of her activities [to Dr. Patterson] at that time, including caring for her mother with dementia and stroke." Tr. 126. Plaintiff argues that this activity "fits in the range of activities [Plaintiff] reported to Dr. Patterson. As [Plaintiff] testified, the care she provided to her mother consisted of cleaning, cooking, keeping track of medications, and making appointments. All of these activities are consistent with [Plaintiff's] report. Therefore, Dr. Patterson did, in fact, have knowledge of the full extent of [Plaintiff's] activities at the time he completed the evaluation." ECF No. 11 at 9-10 (citing Tr. 27). However, the Court's review of the "daily

1   activities" reported by Plaintiff to Dr. Patterson indicates that she stated she

2   "sometimes" has difficulty choosing what to wear and keeping up with hygiene,

3   she does housework but "not consistently," she cooks "for the family" without

4   difficulty, she does grocery shopping "but feels anxious," and she spends her free

5   time studying the Bible.  Tr. 995.  The record does not indicate that Plaintiff

6   reported to Dr. Patterson that she was the primary caregiver for her mother who

7   suffered from multiple medical conditions, including keeping track of her

8   medications and making her medical appointments.  Thus, it was reasonable for the

9   ALJ to give little weight to Dr. Patterson's opinion because Plaintiff's reported

10  activities were inconsistent with those reported throughout the medical record.

11  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (the consistency of a medical

12  opinion with the record as a whole is a relevant factor in evaluating that medical

13  opinion).

14          Second, the ALJ found that records after Dr. Patterson's evaluation "show

15  continued improvement of her mental health symptoms."  Tr. 126.  As noted

16  above, the consistency of a medical opinion with the record as a whole is a relevant

17  factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631; *see also Batson v.*

18  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may

19  discount an opinion that is conclusory, brief, and unsupported by the record as a

20  whole, or by objective medical findings).  Plaintiff concedes that Plaintiff showed

21  "some improvement," but argues she also "showed some deterioration," and she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

cites her own report to Dr. Patterson that her symptoms "waxed and waned over time, resulting in both high and low periods of symptoms." ECF No. 11 at 10 (citing Tr. 994). In her reply, Plaintiff cites several self-reports of excessive stress and depression, and a PHQ score indicating moderate depression. ECF No. 13 at 3-4 (citing 1239, 1316, 1338-39, 1359). However, as noted by the ALJ in the decision, treatment notes consistently note that Plaintiff had euthymic mood and congruent affect, was alert and cooperative, had normal speech, had intact memory and attention, and had intact concentration. ECF No. 12 at 15; Tr. 950, 996-97, 1111, 1122, 1245, 1248, 1313, 1318, 1342, 1350, 1458, 1460, 1463. Thus, regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the continued improvement of Plaintiff's mental health symptoms during the adjudicatory period was inconsistent with the severity of the limitations assessed by Dr. Patterson. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Third, and finally, the ALJ found that the activities reported by Plaintiff do "not suggest that her symptoms are as limiting as [she] has alleged in connection with [her claimed disability]." Tr. 126. Plaintiff does not identify or challenge this reason in her opening brief; thus, the Court may decline to address the issue. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Regardless, in support of this finding, the ALJ specifically noted Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

reports that she is able to care for her elderly mother and young son, perform

personal care, prepare meals, perform household chores and laundry, perform

yardwork, go out alone, drive a car, shop in stores, handle finances, spend time

with others, attend church and Bible studies regularly, and get along with authority

figures.  Tr. 126 (citing Tr. 26-27, 33-34, 273-80).  Thus, the ALJ properly

discounted Dr. Patterson's opinion because it was inconsistent with Plaintiff's

reported functioning.  *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595,

601-02 (1999).  This was a specific, legitimate, and unchallenged reason for the

ALJ to reject Dr. Patterson's opinion.

### 2.  *William Drenguis, M.D.*

In January 2017, Dr. Drenguis examined Plaintiff and found she could stand

and walk for at least two hours in an eight hour workday with normal breaks; sit

about six hours in an eight hour work day with normal breaks; lift and carry twenty

pounds occasionally and ten pounds frequently; occasionally climb steps, stairs,

ladders, scaffolds, and ropes; occasionally stoop, crouch, kneel, and crawl;

frequently reach overhead and forward; and frequently handle, finger and feel.  Tr.

1005-06.  The ALJ gave Dr. Drenguis' opinion partial weight, and specifically

noted that Dr. Drenguis "stated that [Plaintiff] could stand and walk at least 2 hours

in an 8-hour day workday, but did not specify how much she could do.  She has

had no treatment for her neuropathy, there are few complaints of pain, and she has

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

reported no problems with walking or completing her activities of daily living."
Tr. 126.

Plaintiff argues this was not a "valid reason" for the ALJ to reject Dr.
Drenguis' opinion because (1) Plaintiff's history of back pain is "noted several
times in the record"; and (2) Plaintiff informed Dr. Drenguis that she was only
comfortable standing or sitting for an hour at a time, and "could only complete her
daily activities in short, 10-minute spurts because of her pain."  ECF No. 11 at 11
(citing Tr. 1002, 1020, 1025, 1038-39, 1045).  As an initial matter, it is unclear
whether the ALJ rejected Dr. Drenguis' opinion as to Plaintiff's ability to stand
and sit.  As noted by Defendant, the ALJ "explicitly explained that she gave no
weight only to Dr. Drenguis' opinion of manipulative limitations."[3] ECF No. 12 at
19.  However, Dr. Drenguis specifically opined that Plaintiff could stand and walk
"*at least* two hours in an eight-hour workday."  ECF No. 12 at 18-19 (emphasis in
original).  Plaintiff generally contends, without citation to the record, that "if
[Plaintiff] could stand and walk significantly more than two hours in a workday,
Dr. Drenguis naturally would have listed a significantly higher number.  To

---

[3] Plaintiff's opening brief does not challenge the ALJ's findings as to Plaintiff's
manipulative limitations; thus, the Court declines to address the issue.  *See*
*Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

assume otherwise would fail to afford the physician proper deference."  ECF No.

13 at 5-6.

However, regardless of whether the ALJ properly considered Dr. Drenguis'

opinion as to Plaintiff's ability to stand and walk, the ALJ specifically noted that

according to the vocational expert's testimony, "even if the limitation of standing

and walking for a maximum of 2 hours in an 8-hour workday was applied, [the 2

jobs listed by the vocational expert as existing in significant numbers in the

national economy at step five] would remain."  Tr. 48-49, 128-29.  Thus, even

assuming, *arguendo*, that the ALJ erred in considering this portion of Dr.

Drenguis' opinion, any error would be harmless because Plaintiff failed identify

any limitations specifically assessed by Dr. Drenguis that were consequential to the

ALJ's ultimate decision.  *Molina*, 674 F.3d at 1111 (an error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination").

### 3.  *Raylee Weaver-Jensen, Ph.D. and Suzanne Damstedt, therapist*

In August 2016, Dr. Weaver-Jensen completed a "WorkFirst Documentation

Request Form" and opined that Plaintiff was unable to participate in working,

looking for work, or preparing for work.  Tr. 1323.  In October 2016, Ms.

Damstedt completed a "WorkFirst Documentation Request Form" and opined that

Plaintiff was limited to 1-10 hours of participation in working, looking for work, or

preparing for work.  Tr. 1327.  The ALJ considered these opinions jointly, and

gave them little weight for several reasons.  Tr. 126.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

1      As an initial matter, the ALJ noted that in both opinions "duration is not

2  reported." Tr. 126.  To be found disabled, a claimant must be unable to engage in

3  any substantial gainful activity due to an impairment which "can be expected to

4  result in death or which has lasted or can be expected to last for a continuous

5  period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v.*

6  *Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  However, as noted by Plaintiff, Dr.

7  Weaver-Jensen and Ms. Damstedt both checked the box on their questionnaire

8  indicating that Plaintiff's condition was "permanent and likely [to] limit [her]

9  ability to work, look for work, or train to work." Tr. 1324, 1328 (asking medical

10 provider to enter number of weeks or months that Plaintiff's condition would limit

11 their ability to work only if the condition was not considered "permanent").  Thus,

12 while it is reasonable for the ALJ to consider the duration requirement when

13 evaluating medical opinions, rejecting Dr. Weaver Jensen's and Ms. Damstedt's

14 opinions because they did not "report" duration is not supported by substantial

15 evidence.  However, this error is harmless because, as discussed below, the ALJ

16 provided additional clear and convincing reasons to discredit these medical

17 opinions.  *See Carmickle*, 533 F.3d at 1162-63.

18     First, the ALJ found that Plaintiff's treatment notes after these evaluations

19 showed continued improvement in her mental health, including findings of

20 euthymic mood and only mild depression. Tr. 126.  The consistency of a medical

21 opinion with the record as a whole is a relevant factor in evaluating that medical

opinion.  *Orn*, 495 F.3d at 631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).  Plaintiff generally argues that "despite some improvements," Plaintiff's symptoms "fluctuated back and forth between improving and worsening," and "did not improve to the extent that she could sustain competitive employment."  ECF No. 11 at 12.  However, as noted by the ALJ in the decision, treatment notes during the adjudicatory period consistently note that Plaintiff had euthymic mood and congruent affect, was alert and cooperative, had normal speech, had intact memory and attention, and intact concentration.  ECF No. 12 at 15; Tr. 950, 996-97, 1111, 1122, 1245, 1248, 1313, 1318, 1342, 1350, 1458, 1460, 1463.  Thus, regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the continued improvement of Plaintiff's mental health symptoms during the adjudicatory period was inconsistent with the severity of the limitations assessed by Dr. Weaver-Jensen and Ms. Damstedt.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Second, the ALJ noted that Plaintiff was able to engage in a variety of activities with her church, and reported in November 2017 that she "focuses on housework and family care."  Tr. 126, 1462.  Again, Plaintiff does not identify or challenge this reason in his opening brief; thus, the Court may decline to address

the issue.  *See Carmickle*, 533 F.3d at 1161 n.2.  Regardless, in support of this

finding, the ALJ noted Plaintiff's reports that she is able to care for her elderly

mother and young son, perform personal care, prepare meals, perform household

chores and laundry, perform yardwork, go out alone, drive a car, shop in stores,

handle finances, spend time with others, attend church and Bible studies regularly,

and get along with authority figures.  Tr. 126 (citing Tr. 26-27, 33-34, 273-80).  An

ALJ may discount a medical provider's opinion because it is inconsistent with

Plaintiff's reported functioning.  *See Morgan*, 169 F.3d at 601-02.  Thus, the ALJ

properly considered Plaintiff's ability to care for others, participate in church

activities, and take care of her household, as a reason to give little weight to the

opinions of Dr. Weaver-Jensen and Ms. Damstedt.

## B. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that her impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff "has suffered from a medically determinable" impairment; however, Plaintiff's testimony is not consistent with the medical evidence and other evidence in the record for several reasons. Tr. 124-27.

### 1. *Lack of Objective Medical Evidence*

First, the ALJ found that Plaintiff's claimed physical impairments, as well as his claimed mental health limitations, were not consistent with the medical evidence. Tr. 124-26. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by

1    objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2    2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

3    885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant

4    factor in determining the severity of a claimant's pain and its disabling effects.

5    *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

6         Here, the ALJ set out the medical evidence contradicting Plaintiff's claims

7    of disabling limitations.  As to his claimed physical impairments, the ALJ found

8    (1) treatment records indicate Plaintiff's interstitial cystitis improved with

9    medication; (2) the "record shows little treatment for" lower back pain, imaging

10   showed minimal to mild degenerative findings and largely normal examination

11   findings; and (3) Plaintiff's "statements about her diabetes, low blood sugar, and

12   neuropathy are also not consistent with the examination findings and treatment

13   record."  Tr. 124-25.  Plaintiff generally argues, without citation to the record, that

14   her symptoms "varied day to day, [and] her ability to function did as well.  The

15   record is full of both benign and abnormal findings that are consistent with her

16   allegations."  ECF No. 11 at 14.  Plaintiff similarly contends that her conditions

17   "did not show consistent improvement; instead, they showed a pattern of waxing

18   and waning."  ECF No. 11 at 15.

19        However, the ALJ specifically found that Plaintiff was treated successfully

20   with medication several times for interstitial cystitis, and "[a]t no time did she

21   report that she had such severe pain that affected her body movements or her

concentration and focus." Tr. 124, 1352, 1357, 1384. Moreover, with respect to her complaints of back pain, the ALJ noted that imaging in January 2017 showed only minimal to mild degenerative findings; and examination findings included normal gait, stable station, negative Romberg, able to walk on heels and toe, able to tandem walk, able to stand on one foot, able to perform a full squat, negative straight leg raising, mild decrease in range of motion, no muscle spasm, and decreased sensation to light touch pinprick in a stocking distribution bilaterally. Tr. 124, 1003-05, 1044. Finally, regarding Plaintiff's diabetes, low blood sugar, and neuropathy, the ALJ cited treatment records showing a history of good control of her diabetes, a normal diabetic foot screen examination in January 2017, a normal diabetic eye examination in June 2017, a normal June 2017 diabetic foot screening, and lack of evidence of ongoing low blood sugar readings. Tr. 125 (citing Tr. 949 (reporting history of good control of blood sugars), 1231, 1235, 1239, 1246-47 (reporting high blood sugar), 1253, 1332, 1350).

As to his claimed mental health limitations, the ALJ found that Plaintiff's testimony of mental health symptoms was not consistent with the evidence. Tr. 126. Plaintiff did not specifically identify or challenge the ALJ's analysis of her mental health complaints in her opening brief; thus, the Court may decline to address the specific issue. *See Carmickle*, 533 F.3d at 1161 n.2. Regardless, in support of this finding, the ALJ cited treatment notes from the relevant adjudicatory period indicating that Plaintiff's mood was doing "doing well

overall," insight and judgment were good, mood and affect were normal, she was fully alert an oriented, and had normal recent and remote memory.  Tr. 125, 950, 1122, 1245, 1248, 1342, 1350.  In addition, the ALJ noted that at a consultative psychological evaluation in January 2017 Plaintiff complained of anxiety and depression symptoms was "admitted she was 'doing better' because she had been focusing on Bible study and taking medication"; and upon examination she was cooperative and personable, had generally linear and goal-directed thought processes, her mood was dysphoric with congruent affect, memory was within normal limits, and her mood was generally stable.  Tr. 125, 995-97.  Finally, as noted by the ALJ, a March 2017 psychiatric examination show that Plaintiff was fully oriented, thought processes were coherent, insight was good, and fund of knowledge was appropriate; and individual therapy notes from November 2017 show that Plaintiff presented with euthymic mood and congruent affect, and "demonstrated coping skills and future thinking/planning."  Tr. 126 (citing Tr. 1313, 1318, 1458, 1460, 1463).

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with medical evidence.  *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation).  This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason,

supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2.  Failure to Seek and Comply with Treatment

Second, the ALJ noted that "[a]fter her January 2017 consultative examination, [Plaintiff] sought no treatment for back complaints"; and "she never reported any issues with neuropathy in her hands and only mentioned issues with her feet, but declined medication because it was mild."  Tr. 124-25.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *Orn*, 495 F.3d at 638; *see also Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor).

First, Plaintiff concedes that she "did not receive a significant amount of treatment for her back pain," but generally contends that she "suffered from this condition."  ECF No. 11 at 15.  However, the only evidence cited by Plaintiff in support of this argument is her own report in January 2017 that she experienced increased back pain when she turned her head, and a "marked" increase in back pain "approximately every other week."  ECF No. 11 at 15 (citing Tr. 1001).  Thus, it was reasonable for the ALJ to find that, given the lack of treatment, Plaintiff's statements about disabling limitations due to back pain are not consistent with the record.  Tr. 124.

1    Second, Plaintiff argues that the ALJ "mischaracterized [Plaintiff's] decision

2    to reject treatment" for her neuropathy because her symptoms were mild; rather,

3    Plaintiff cites a January 2017 consultative examination wherein she reported that

4    she declined treatment "after reading about the side effects." ECF No. 11 t 15

5    (citing Tr. 1002). This argument is unavailing. An ALJ "will not find an

6    individual's symptoms inconsistent with the evidence in the record on this basis

7    without considering possible reasons he or she may not comply with treatment or

8    seek treatment consistent with the degree of his or her complaints." Social

9    Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL

10    1119029. However, regardless of Plaintiff's self-report at her January 2017

11    consultative examination, the ALJ properly supported her finding that Plaintiff

12    declined treatment for neuropathy by citing a separate treating provider's report

13    that Plaintiff "chooses not to treat [her neuropathy] as [it] seems to be mild

14    bothersome." Tr. 364. The Court also notes that this same treatment note indicates

15    that while Plaintiff "complains of some numbness, tingling in her feet and swelling

16    in her feet[,] [s]he states it comes and goes but has not been bothering her a lot."

17    Tr. 360. Finally, Plaintiff testified that she was offered pain medication for her

18    neuropathy but she "didn't want to take it because [she's] already on a lot of

19    medication and [she'd] rather just not deal with that right now." Tr. 42.

20    Based on the foregoing, and regardless of evidence in the record that could

21    be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

Plaintiff's failure to seek treatment for back pain and neuropathy was inconsistent

with the alleged severity of her complaints. *See Burch*, 400 F.3d at 679 (where

evidence is susceptible to more than one interpretation, the ALJ's conclusion must

be upheld). This was a clear and convincing reason for the ALJ to discredit

Plaintiff's symptom claims.

### 3. Daily Activities

Third, the ALJ noted that at the time of her amended onset date, Plaintiff

was separated from her husband, "taking care of a 6 to 7 year old boy on her own,

as well as her mother who had both dementia and a stroke," taking care of

household chores, and managing the household. Tr. 126. As noted by Plaintiff, a

claimant need not be utterly incapacitated in order to be eligible for benefits. ECF

No. 11 at 16 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the

mere fact that a plaintiff has carried on certain activities . . . does not in any way

detract from her credibility as to her overall disability."). Regardless, even where

daily activities "suggest some difficulty functioning, they may be grounds for

discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff generally argues that her activities were "sporadic and reportedly

difficult for [her] to complete. Thus, they did not contradict her allegations." ECF

No. 11 at 15. However, in addition to her ability to care for her young child and

her elderly mother with health problems, the ALJ noted elsewhere in the decision

that Plaintiff's activities included performing personal care, preparing meals, performing household chores and laundry, performing yardwork, going out alone, driving a car, shopping in stores, handling finances, spending time with others, and attending church and Bible studies regularly.  Moreover, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented daily activities, including caring for other people and managing a household without assistance, was inconsistent with her allegations of incapacitating limitations.  Tr. 28; *Molina*, 674 F.3d at 1113 (plaintiff's activities may be grounds for discrediting plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**C. Lay Witness Evidence**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to

1    [his] condition.").  To discount evidence from lay witnesses, an ALJ must give

2    reasons "germane" to each witness.  *Dodrill*, 12 F.3d at 919.

3         Here, Plaintiff's friend, Charlene Sorrell, completed a third-party function

4    report.  She reported that Plaintiff used to be able to spend more time with her

5    horses and was more physically active, she is "quick tempered because she doesn't

6    feel good," and she "falls apart real easy" because her "medical condition has her

7    stressed out."  Tr. 290-97.  The ALJ considered Ms. Sorrell's report and found it

8    "is not supported by or consistent with the record as a whole, including objective

9    signs and findings.  Accordingly, the statement is not accorded substantial weight."

10   Tr. 127.  Plaintiff argues this finding was "vague" and therefore the ALJ "did not

11   give the required specific, germane reasons for rejecting the lay witness

12   testimony."  ECF No. 11 at 17.

13        As an initial matter, the ALJ may discount lay testimony if it conflicts with

14   the medical evidence.  *See Lewis*, 236 F.3d at 511.  Moreover, where the ALJ gives

15   clear and convincing reasons to reject a claimant's testimony, and where a lay

16   witness's testimony is similar to the claimant's subjective complaints, the reasons

17   given to reject the claimant's testimony are also germane reasons to reject the lay

18   witness testimony.  *See Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694

19   (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane

20   reasons for rejecting testimony by one witness, the ALJ need only point to those

21   reasons when rejecting similar testimony by a different witness").  Thus, the ALJ's

well-supported reasons for rejecting Plaintiff's subjective symptom claims, as discussed above, apply equally to Ms. Sorrell's statements.  Based on the foregoing, the ALJ did not err in discounting Ms. Sorrell's lay testimony.

**D. Step Five**

Finally, Plaintiff argues that the ALJ failed to meet her step five burden "because the ALJ improperly rejected the opinion of [Plaintiff's] medical providers, [and] the limitations they assessed were improperly excluded from the hypothetical."  ECF No. 11 at 18.  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228).  However, as discussed in detail above, the ALJ's consideration of the medical opinion evidence was supported by the record and free of legal error.  The hypothetical posed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record.  Thus, the ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett,* 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims and the lay witness

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29

statement, properly weighed the medical opinion evidence, and did not err at step five.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 12**, is

    **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** January 6, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge